**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| CINDY ZURAKOV and CARLOS GOMEZ, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> ENHANCED RECOVERY COMPANY LLC, <br><br> Defendant. | Case No.: 19-cv-1389 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1.     This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2.     The court has jurisdiction to grant the relief sought pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337.  Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.     Plaintiff Cindy Zurakov is an individual who resides in the Eastern District of Wisconsin (Washington County).

4.     Plaintiff Carlos Gomez is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.     Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from that Plaintiff a debt incurred for personal, family, or household purposes.

6.      Defendant Enhanced Recovery Company, LLC ("ERC") is a debt collection agency with its principal offices located at 8014 Bayberry Road, Jacksonville, Florida 32256.

7.      ERC is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.      ERC is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9.      ERC is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

### *Facts Relating to Plaintiff Zurakov*

10.      On or around February 12, 2019, Defendant mailed a debt collection letter to Plaintiff Zurakov regarding an alleged debt.  A copy of this letter is attached to this complaint as Exhibit A.

11.      Upon information and belief, the alleged debt referenced in Exhibit A was incurred for personal, family, or household purposes, namely household energy utility services.

12.      Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to the alleged debt inserted by the computer.

13.      Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

14.      Upon information and belief, Exhibit A is the first written communication Defendant mailed to the consumer regarding this alleged debt.

2

15.   Exhibit A contains language that largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

> Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt of the notice, the debt will be assumed to be valid by us.
>
> If you notify our office below in writing within the thirty-day period that the debt, or any portion thereof is disputed, we will obtain verification of the debt or a copy of any judgment that may be of record against you. We will mail the verification or copy of the judgment to you.
>
> Upon your written request to this office within the thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor listed in the above section of this notice.

16.   The header in Exhibit A states:

> February 12, 2019
> Creditor:                WEC Group
> Original Creditor:       We Energies Utilities
> Account Number:          XXXXXX5821
> Amount of Debt:          $342.79
> Reference Number:        ████1841

17.   Exhibit A also contains the following:

> Our records indicate that your balance with AT&T DirecTV remains unpaid; therefore your account has been placed with ERC® for collection efforts. We are authorized to resolve your account for less than the full balance for a payoff amount of $225.74.
>
> ERC® has been authorized to report this debt to credit reporting agencies.
>
> Upon receipt and clearance of $225.74, your account will be satisfied.

18.   Exhibit A is confusing and misleading as the character and legal status of the alleged debt referenced in Exhibit A.

19.   Exhibit A states that the "Creditor" is "WEC Group," that the "balance with WEC Group remains unpaid," and that the "Original Creditor" is "We Energies Utilities."

20.   Exhibit A does not describe the relationship between the "Creditor: WEC Group," and the "Original Creditor: We Energies Utilities."

3

21.     The unsophisticated consumer understands that debts are freely assignable and would assume that We Energies Utilities had assigned the debt to a third-party debt buyer named "WEC Group."

22.     Upon information and belief, the entity that Defendant identified as "WEC Group" is actually WEC *Energy* Group Inc., a utility provider, and the parent company of We Energies Utilities. A corporate entity search for "WEC Group" on the Wisconsin Department of Financial Institutions website returns only one entity, "WEC ENERGY GROUP INC."

23.     The unsophisticated consumer would not understand that the "Original Creditor" and "Creditor" entities in <u>Exhibit A</u> were actually the same creditor and would think that the debt had been sold to a third-party debt buyer when it had not.

24.     The Seventh Circuit recently held that a debt collector must *clearly* identify the current creditor of the debt:

> If the validation notice required under § 1692g(a)(2) does not identify the current creditor clearly and accurately, the law has been violated. A plaintiff need not offer additional evidence of confusion or materiality to prove the violation.

*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016).

25.     "*Clear* identification of the current creditor serves the important purpose of helping unsophisticated consumers avoid fraud and the potential for double payments." *Taylor*, 2018 U.S. Dist. LEXIS 159862, at *5-6 (S.D. Ind. Sept. 19, 2018) (citing *Janetos*, 825 F.3d at 319 and *Braatz*, 2011 U.S. Dist. LEXIS 123118, at *4).

26.     For this reason, courts hold that a debt collector must clearly and unequivocally identify the current creditor to whom the debt is owed and "a FDCPA plaintiff states a claim when she alleges that the collection letter names the creditor in a manner that is unclear or confusing." *Blarek v. Creditors Interchange*, No. 05-cv-1018, 2006 U.S. Dist. LEXIS 60595, at

4

*3 (E.D. Wis. Aug. 25, 2006); *see also, e.g., Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 133 (E.D.N.Y. 2007); *Walls v. United Collection Bureau*, No. 11-cv-6026, 2012 U.S. Dist. LEXIS 68079, at *5 (N.D. Ill. May 16, 2012); *Deschaine v. Nat'l Enter. Sys.*, No. 12-cv-50416, 2013 U.S. Dist. LEXIS 31349, at *3-5 (N.D. Ill. Mar. 7, 2013); *Aribal*, 2013 U.S. Dist. LEXIS 105355, at *12-13; *Braatz*, 2011 U.S. Dist. LEXIS 123118, at *3; *Pardo v. Allied Interstate, LLC*, No. 14-cv-1104, 2015 U.S. Dist. LEXIS 125526, at *8-9 (S.D. Ind. Sept. 21, 2015); *Long v. Fenton & McGarvey Law Firm, P.S.C.*, 223 F. Supp. 3d 773, 778-79 (S.D. Ind. Dec. 9, 2016); *Brinkmeier v. Round Two Recovery, LLC*, No. 15-cv-3693, 2016 U.S. Dist. LEXIS 97664, at *4 (E.D.N.Y. July 25, 2016); *Datiz v. Int'l Recovery Assocs.*, No. 15-cv-3549, 2018 U.S. Dist. LEXIS 127196 (E.D.N.Y. July 27, 2018), *adopted by,* 2018 U.S. Dist. LEXIS 163290 (E.D.N.Y. Sept. 24, 2018); *Smith v. Cohn, Goldberg & Deutsch, LLC*, 296 F. Supp. 3d 754, 761 (D. Md. 2017); *Taylor*, 2018 U.S. Dist. LEXIS 159862, at *7-11.

27.     Moreover, Exhibit A states that the "payoff amount" is $257.09.

28.     The reference to a "payoff amount" of $257.09 is confusing and misleading.

29.     The normal meaning of the term "payoff amount" is the amount a consumer must pay to satisfy the debt in full.  *See,* https://www.consumerfinance.gov/ask-cfpb/what-is-a-payoff-amount-is-my-payoff-amount-the-same-as-my-current-balance-en-205/ ("Your payoff amount is how much you will actually have to pay to **satisfy the terms of your mortgage loan and completely pay off your debt.**") (emphasis added).

30.     In contrast, the normal meaning of "settling" a debt is that the debt is permanently resolved in exchange for a payment of a portion, usually a percentage, of the alleged balance.

31.     The use of "payoff amount" to refer to a settlement offer amount in Exhibit A is especially confusing because Exhibit A also contains the following:

ERC® has been authorized to report this debt to credit reporting agencies.

32.     On the face of Exhibit A, it is unclear what will happen if the consumer makes a payment of the "payoff amount."

33.     The reference to the "payoff amount" suggests that the debt would be treated as though it had been paid in full.

34.     It is impossible to determine whether Defendant, or the creditor, could, or would, continue to report the "resolved" debt to consumer reporting agencies as "settled in full" or "paid in full." *See, e.g., Knight v. Midland Credit Mgmt.*, 755 Fed. Appx. 170, 175-76 (3d Cir. 2018).

35.     In credit reporting, a formerly delinquent account that is designated "paid in full" has a less-negative impact on the consumer's "creditworthiness" than the same account designated "settled in full for less than the full balance," with all other variables being equal.

36.     The consequences of misleading a consumer as to whether the account would be reported as "paid in full" or "settled in full" is material to the unsophisticated consumer "because it may affect whether a debtor makes a payment and which option he or she chooses." *Knight*, 755 Fed. Appx. at 176.

37.     Whether a payment would actually settle the debt is, by definition, a material term of a settlement offer and must be communicated clearly and effectively. *E.g., Nichols v. Northland Groups, Inc.*, 2006 U.S. Dist. LEXIS 15037, at *19 (N.D. Ill. Mar. 31, 2006) ("Requiring a clear statement of the settlement proposal, including the method by which the settlement amount is calculated, will not interfere with the debt collector's freedom to negotiate."); *Al v. Van Ru Credit Corp.*, 2018 U.S. Dist. LEXIS 70321, at *7-8 (E.D. Wis. Apr.

6

26, 2018) (discussing settlement offers and observing that, "Where the FDCPA requires clarity … ambiguity itself can prove a violation.") (quoting *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 686-87 (7th Cir. 2017)); *see also, Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, at *13 (W.D. Okla. Mar. 30, 2017) (collection letter violated the FDCPA because "[a]ny consumer receiving the first letter would be left to wonder about a material term of the offer[.]"); *Dixon v. Law Office of J. Scott Watson P.C.*, 2018 U.S. Dist. LEXIS 18184, at *10-11 (E.D. Penn. Feb. 5, 2018) (settlement offer that specified initial installment amounts but left open the amount of later installments potentially violated the FDCPA), *cross motions for summary judgment denied by, Dixon v. Scott*, 2018 U.S. Dist. LEXIS 133076.

38.     Further, <u>Exhibit A</u> does not provide an expiration date for the "payoff amount."

39.     The unsophisticated consumer, not knowing when the settlement offer expired, would feel intimidated into paying before the offer "expired." *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment.").

40.     Providing the settlement offer alongside the validation notice contradicts and overshadows the consumer's validation rights. *See, Muha*, 558 F.3d at 629.

41.     The settlement offer in <u>Exhibit A</u> is confusing to the unsophisticated consumer because the consumer would understand that it required payment during the validation period, but did not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days.

7

These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

42. The unsophisticated consumer, unsure when the settlement offer in Exhibit A expires, would feel compelled to make a settlement payment as soon as possible, and during the validation period, to ensure the settlement offer had not expired without notice prior to her tendering of payment. Thus, there is an apparent contradiction between the settlement offer and the validation notice.

43. The unsophisticated consumer would be confused about whether the settlement offer in Exhibit A would require her to forego her rights to validate the debt.

44. The unsophisticated consumer would not know whether requesting verification of the debt would be interpreted as a rejection of the settlement offer.

45. The plain language of Exhibit A is unclear as to how the debt collector would proceed in the event that the consumer mailed a dispute along with a payment that was intended to accept the settlement offer in the case that the debt could be verified.

46. Where a consumer mailed a dispute along with a payment that was intended to accept a settlement offer in Exhibit A, under the terms of Exhibit A, the debt collector might:

    a. Hold the payment in escrow pending verification of the debt;

    b. Interpret the payment as an accord and satisfaction and settlement in full that contractually bars the consumer from requesting verification of the debt; or

    c. Send the payment back to the consumer pending verification of the debt, in which case the consumer may no longer be able to settle the debt because the offer would have expired while the debt collector was obtaining verification.

8

47.     Where a consumer mails a dispute along with a payment that was intended to accept a settlement offer with an impending expiration date, whether the FDCPA requires a debt collector to proceed along any of the above paths is an open question in the Seventh Circuit. *See Bailey v. TRW Receivables Management Services, Inc.*, 1990 U.S. Dist. LEXIS 19638, *7-8 (D. Haw. Aug. 16, 1990) ("There is nothing in the statute which indicates that a debt collector is not required to provide verification where a consumer requests it after paying the debt.").

48.     Whether accepting payment, or even holding payment pending verification, is a "further attempt to collect the debt" is an open question in the Seventh Circuit. *See Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234, 1243 (D. Haw. Feb. 5, 2002) ("Because the debt collector in *Bailey* had already collected the debt, there was no collection to 'cease' pending validation.  In *Bailey*, keeping the consumer's money was tantamount to continuing collection activity.").

49.     The unsophisticated consumer would be confused as to whether she had effectively exercised her validation rights by sending a payment along with a dispute letter.

50.     The unsophisticated consumer may unwittingly reject a settlement offer by disputing the debt.  If the debt collector treated the acceptance of a settlement offer as a continuing attempt to collect a debt, *see Sambor*, 183 F. Supp. 2d at 1243, the debt collector would need to return the settlement payment pending verification of the debt.

51.     Or the consumer may unwittingly forego her dispute rights by accepting the settlement offer because the debt collector treated the payment as "resolving the account" notwithstanding the consumer's statutory right to dispute the debt.

52.     Moreover, the unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in Exhibit A.

9

53.     The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of the 30 day period in 15 U.S.C. 1692g(a). *See Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 95 (2d Cir. 2008) ("the aim of § 1692g is to provide a period for the recipient of a collection letter to consider her options.").

54.     Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. She may not recognize the creditor – debts are freely assignable and corporations, especially banks, often change names.

55.     The § 1692g validation period lasts for 30 days. It is the consumer's right to *request* verification until the end of the thirty-day period. If the request is not made until the end of the thirty-day period, the verification request would not be processed, researched by the creditor, and returned to the consumer until long after settlement offer payment deadline has expired. The consumer would be left with no time to review the verification and determine whether to accept the settlement offer.

56.     The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in Exhibit A. The unsophisticated consumer would believe that the settlement offer would expire before the debt collector provides verification and would be left with little or no time to review the verification and determine whether to accept the settlement offer.

57.     The effect of the settlement offer in the initial written debt communication is to discourage or prevent consumers from exercising their validation rights.

10

58.     Defendant did not include explanatory language in Exhibit A, *see, e.g.*, *Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

59.     Any explanatory language should make clear whether a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt.

60.     Plaintiff Zurakov read Exhibit A.

61.     60.     Plaintiff Zurakov was confused and misled by Exhibit A.

62.     The unsophisticated consumer would be confused and misled by Exhibit A.

63.     Plaintiff Zurakov had to spend time and money investigating Exhibit A and the consequences of any potential responses to Exhibit A.

### *Facts Related to Plaintiff Gomez*

64.     On or around February 21, 2019, Defendant mailed a debt collection letter to Plaintiff Gomez regarding an alleged debt owed to "AT&T DirecTV."  A copy of this letter is attached to this complaint as Exhibit B.

65.     Upon information and belief, the alleged debt referenced in Exhibit B was incurred for personal, family, or household purposes, namely telecommunications services.

66.     Upon information and belief, Exhibit B is a form letter, generated by a computer, and with the information specific to the alleged debt inserted by the computer.

67.     Upon information and belief, Exhibit B is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

68.     Upon information and belief, Exhibit B is the first written communication Defendant mailed to the consumer regarding this alleged debt.

11

69. <u>Exhibit B</u> contains language that largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

> Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt of the notice, the debt will be assumed to be valid by us.
>
> If you notify our office below in writing within the thirty-day period that the debt, or any portion thereof is disputed, we will obtain verification of the debt or a copy of any judgment that may be of record against you. We will mail the verification or copy of the judgment to you.
>
> Upon your written request to this office within the thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor listed in the above section of this notice.

70. <u>Exhibit B</u> also contains the following:

> Our records indicate that your balance with AT&T DirecTV remains unpaid; therefore your account has been placed with ERC® for collection efforts. We are authorized to resolve your account for less than the full balance for a payoff amount of $225.74.
>
> ERC® has been authorized to report this debt to credit reporting agencies.
>
> Upon receipt and clearance of $225.74, your account will be satisfied.

71. <u>Exhibit B</u> states that the "payoff amount" is $225.74.

72. The reference to the "payoff amount" of $225.74 is confusing and misleading because the normal meaning of the term "payoff amount" is the amount a consumer must pay to satisfy the debt in full. *See,* https://www.consumerfinance.gov/ask-cfpb/what-is-a-payoff-amount-is-my-payoff-amount-the-same-as-my-current-balance-en-205/ ("Your payoff amount is how much you will actually have to pay to **satisfy the terms of your mortgage loan and completely pay off your debt.**") (emphasis added).

73. In contrast, the normal meaning of "settling" a debt is that the debt is permanently resolved in exchange for a payment of a portion of the alleged balance.

74. The use of "payoff amount" to refer to a settlement offer amount is especially confusing in <u>Exhibit B</u> because <u>Exhibit B</u> also contains the following:

> Payment of settlement amount does not make you eligible for reinstatement of AT&T DirecTV services. To be eligible for service your entire balance must be paid. Upon payment of the entire balance, you may apply for new service with AT&T DirecTV.

12

75. On the face of Exhibit B, it is unclear what will happen if the consumer makes a payment of the "payoff amount" of $225.74.

76. Exhibit B states that the consumer can "settle" the debt for $225.74, but also states that, "Payment of settlement amount does not make you eligible for reinstatement of AT&T DirecTV services. To be eligible for service your entire balance must be paid. Upon payment of the entire balance, you may apply for new service with AT&T DirecTV," which indicates that payment would not actually resolve the debt in full.

77. The representation that paying the settlement amount will "resolve your account" inherently contradicts the representation that the consumer may not "apply for new service" unless she pays the "entire balance" because refusing to allow a consumer to even *apply* for new service means the "payoff amount" did not actually "resolve" the account."

78. Moreover, Exhibit B also references credit reporting, and it is impossible to determine whether Defendant, or the creditor, could, or would, continue to report the "resolved" debt to consumer reporting agencies as "settled in full" or "paid in full." *E.g., Johnson v. ERC Recovery Co., LLC*, 228 F. Supp. 3d 870, 876-77 (N.D. Ind. Jan. 17, 2017).

79. The consequences of misleading a consumer with respect to settling a debt are greater than misleading the consumer about the amount of the debt. In this circumstance, the consumer could make the "settlement" payment but Defendant or the creditor may still report the account as unpaid. Such reporting would have a more negative effect on the consumer's creditworthiness (as measured by "credit scores") than payment in full or a true settlement in which a zero balance is all that remains.

80. Whether a payment would actually settle the debt is, by definition, a material term of a settlement offer and must be communicated clearly and effectively. *E.g., Nichols v.*

*Northland Groups, Inc.*, 2006 U.S. Dist. LEXIS 15037, at *19 (N.D. Ill. Mar. 31, 2006) ("Requiring a clear statement of the settlement proposal, including the method by which the settlement amount is calculated, will not interfere with the debt collector's freedom to negotiate."); *Al v. Van Ru Credit Corp.*, 2018 U.S. Dist. LEXIS 70321, at *7-8 (E.D. Wis. Apr. 26, 2018) (discussing settlement offers and observing that, "Where the FDCPA requires clarity . . . ambiguity itself can prove a violation.") (quoting *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 686-87 (7th Cir. 2017)); *see also, Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, at *13 (W.D. Okla. Mar. 30, 2017) (collection letter violated the FDCPA because "[a]ny consumer receiving the first letter would be left to wonder about a material term of the offer[.]"); *Dixon v. Law Office of J. Scott Watson P.C.*, 2018 U.S. Dist. LEXIS 18184, at *10-11 (E.D. Penn. Feb. 5, 2018) (settlement offer that specified initial installment amounts but left open the amount of later installments potentially violated the FDCPA), *cross motions for summary judgment denied by, Dixon v. Scott*, 2018 U.S. Dist. LEXIS 133076.

81.     Indeed, the reference to credit reporting is, itself a form of "collection activity," because reporting the debt as "settled in full" is a negative item in credit reporting and itself constitutes "collection activity." *Johnson v. ERC Recovery Co., LLC*, 228 F. Supp. 3d 870, 876-77 (N.D. Ind. 2017).

82.     Further, like Exhibit A, Exhibit B does not provide an expiration date for the "payoff amount."

83.     The unsophisticated consumer, not knowing when the settlement offer expired, would feel intimidated into paying before the offer "expired." *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an

14

intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment.").

84.     Providing the settlement offer alongside the validation notice contradicts and overshadows the consumer's validation rights.  *See Muha*, 558 F.3d at 629.

85.     Like the settlement offer in <u>Exhibit A</u>, the settlement offer in <u>Exhibit B</u> is confusing and misleading to the unsophisticated consumer.

86.     Plaintiff Gomez read <u>Exhibit B</u>.

87.     86.     Plaintiff Gomez was confused and misled by <u>Exhibit B</u>.

88.     The unsophisticated consumer would be confused and misled by <u>Exhibit B</u>.

89.     Plaintiff Gomez had to spend time and money investigating <u>Exhibit B</u> and the consequences of any potential responses to <u>Exhibit B</u>.

### The FDCPA

90.     The FDCPA creates both substantive and procedural rights for consumers, and violations of those rights risk harm to concrete interests that the FDCPA protects.  *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at \*12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at \*3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v.*

*Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

91.    Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

16

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

92.     Misrepresentations of the character, amount or legal status of any debt, including misrepresentations relating to credit reporting or settlement of an alleged debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

93.     15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

17

94.    15 U.S.C. § 1692e(2) specifically prohibits any "false representation of the character, amount, or legal status of any debt."

95.    15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

96.    15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

97.    15 U.S.C. § 1692g(a) states:

(a) **Notice of debt; contents**.  Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion  thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

98.    Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.  15 U.S.C. § 1692g(b).

18

## COUNT I – FDCPA

99.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

100.    Count I is brought on behalf of Plaintiff Zurakov.

101.    Exhibit A is confusing and misleading as to the name of the creditor and the character and legal status of the alleged debt.

102.    Defendant violated 15 U.S.C. §§ 1692e(2), 1692e(10), and 1692g(a)(2).

## COUNT II - FDCPA

103.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

104.    Count II is brought on behalf of both Plaintiffs.

105.    Exhibits A & B include a settlement offer that is misleading as to whether the debt collector may revoke the offer of settlement at any time.

106.    The "payoff amount" offers in Exhibits A & B are confusing and misleading as to how Defendant will credit report the "resolution."

107.    The "payoff amount" offers in Exhibits A & B overshadow and are inconsistent with the disclosure of the consumer's right to dispute the debt and request the name and address of the original creditor.

108.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, and 1692g(b).

## CLASS ALLEGATIONS

109.    Plaintiffs brings this action on behalf of two proposed classes:

110.    Class I consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action,

19

(c) seeking to collect an alleged debt incurred for personal, family, or household purposes, (d) between September 23, 2018 and September 23, 2019, inclusive, (e) where neither letter was not returned by the postal service. Plaintiff Zurakov is the proposed representative for Class I.

111.    Class II consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by <u>Exhibit B</u> to the complaint in this action, (c) seeking to collect an alleged debt incurred for personal, family, or household purposes, (d) between September 23, 2018 and September 23, 2019, inclusive, (e) where neither letter was not returned by the postal service. Plaintiff Gomez is the proposed representative for Class II.

112.    The classes are so numerous that joinder is impracticable.

113.    Upon information and belief, there are more than 50 members of each class.

114.    There are questions of law and fact common to the members of the classes, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

115.    Plaintiffs' claims are typical of the claims of the respective class members. All are based on the same factual and legal theories.

116.    Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

117.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

118.    Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Classes and against Defendant for:

    (a)    actual damages;

    (b)    statutory damages;

    (c)    attorneys' fees, litigation expenses and costs of suit; and

    (d)    such other or further relief as the Court deems proper.

Dated: September 23, 2019

**ADEMI & O'REILLY, LLP**

By:    /s/ Mark A. Eldridge
          John D. Blythin (SBN 1046105)
          Mark A. Eldridge (SBN 1089944)
          Jesse Fruchter (SBN 1097673)
          Ben J. Slatky (SBN 1106892)
          3620 East Layton Avenue
          Cudahy, WI 53110
          (414) 482-8000
          (414) 482-8001 (fax)
          jblythin@ademilaw.com
          meldridge@ademilaw.com
          jfruchter@ademilaw.com
          bslatky@ademilaw.com